IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| FRED DURROUGH #339026 | § | |
| | § | CIVIL ACTION NO. 6:04cv550 |
| RAYNALDO CASTRO, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Report of the Magistrate Judge entered August 17, 2004, is hereby WITHDRAWN and the following is substituted therefor.

The plaintiff Fred Durrough, proceeding *pro se*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. §636(c).

An evidentiary hearing has been conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Durrough said that around January 19, 2004, he began having severe stomach cramps. He was taken to Palestine Memorial Hospital and checked in. He stayed in the hospital for four days.

When he was taken to the hospital, Durrough said, he was placed in handcuffs, leg irons, and a "black box", a device placed around the handcuffs. While he was in the hospital, Durrough said, these restraints were never removed, not even to let him shower. He also said that the restraints were not removed at mealtime, but he was not eating solid food anyway. He indicated that the black box was "new" and that he had never seen it before; Durrough stated that it was "very degrading" and that there "had to be a better way" of restraining inmates, particularly in light of the fact that he was in considerable pain and was not an escape risk.

When he got out of the hospital, Durrough said, he thought he was going to go back to the Michael Unit, but instead he was taken to the Hughes Unit. He was put in a cold room, with dirty linen, and given cold food, which he was not inclined to eat, so he was finally given a protein-supplement drink called Ensure. Durrough indicated that he lost 14 pounds in 14 days.

When he left the Hughes Unit, Durrough said, he was told that he was going to go to John Sealy Hospital in Galveston, but it would be a one-day trip, entailing numerous hours of travel while chained up, and he had been suffering from diarrhea so he did not want to go. Finally, Durrough said, he agreed to go to John Sealy, because he was told that he would have to go in order to get back to the Michael Unit.

When he did go to John Sealy, Durrough said, he spent some nine hours in transit. He saw a "trainee," who began checking his stomach. Durrough said that she should get his medical records, but she said that the records were not at the hospital and he should come back in a week, which he declined. Durrough said that he was supposed to have gall bladder surgery, but he never did, and the problem eventually resolved itself to some extent.

Next, Durrough said, he suffers from periodontal disease and is losing his teeth, but the prison recently instituted a policy saying that they will not provide dentures except for medical necessity. His teeth are loose, but the prison officials simply weigh him and say that if he has no weight loss, then there is no medical necessity.

At some point, Durrough said, a dental assistant checked him for a referral to a committee, to determine if he would be approved for false teeth. He was told that he would be approved for false teeth, but this has not happened. Instead, Durrough says, he has been offered a "blended diet," which he does not want. He noted that he has offered to have his family pay to have false teeth made for him, but the prison officials have refused.

## The Prison Records

The Court has received and reviewed a certified copy of Durrough's prison records. On September 15, 2004, Durrough filed a Step One grievance complaining that he has been told that he

has advanced periodontitis, which he describes as a gum disease.  He says that the dental assistant told him that due to budget cuts, they could not replace his teeth with false teeth; he says that he offered to have his family pay, but the dentist, Dr. Eliasson, said that they could not do that.  The response to this grievance was that Durrough did not have a treatment plan prior to March of 2003 which included dentures or partials, and that there was no medical necessity for dentures or partials, so he was not eligible.

On November 8, 2004, Durrough filed a Step Two appeal.[1]  In this appeal, he states that the Step Two is to exhaust his administrative remedies and that he knew when he filed the Step One grievance that the prison officials "would not do the right thing" and pull his teeth and give him dentures.  He says that he intends to file suit in federal court and will be asking for damages of $100 per day beginning in March 2003; he makes reference to a case in which a prison inmate was awarded $3000.00 in damages and ordered false teeth by the court.  The response to this grievance was that the Step One grievance appropriately addressed his allegations.  The response adds that based on the change in policy, the Community Standards for Medicare require a medical necessity for dentures or partial dentures, and that the Texas Department of Criminal Justice Health Services Division does not supervise the universities contracted to provide health care.  It suggests that Durrough write to Albert Wells, Director of Dental Services for the University of Texas Medical Branch, and says that Durrough apparently did not attempt informal resolution before filing his grievance.  Finally, the response notes that Durrough apparently exceeded the time limit for filing grievances, in that he had 15 days from the time or knowledge of the incident to file a Step One grievance.

The first entry in Durrough's medical records which were provided to the Court concerning his dental care is dated April 23, 2004.  This record reflects that Durrough needed a tooth pulled and consented to extraction because of a long-term toothache.  His oral hygiene was noted as adequate,

---

[1] The date placed by Durrough on his Step Two appears to be April 29, 2004, which is well before the date of the Step One; the grievance was received on November 1, 2004, so presumably it was signed on October 29

3

and tooth no. 15 was pulled. On August 18, 2004, Durrough filed a sick call request complaining that a tooth was giving him a lot of pain. He was assessed with periodontal disease, and consented to extraction of tooth no. 12, which was done.

On September 22, 2004, Durrough filed a sick call request concerning tooth pain. He consented to the extraction of tooth no. 1, which was done. On October 15, 2004, Durrough's body-mass index was measured at 25, which is at the very top end of the normal range, bordering on overweight. He was scheduled to return to the clinic for another body mass index calculation in a month. On November 15, Durrough again had his body mass index read, and it was measured at 26. Durrough signed his lawsuit on December 1, 2004.

Durrough attached various documents to his complaint, which the Court has also reviewed. He furnished a copy of a Step Two grievance which he filed regarding his stay in the hospital, but it was returned to him because the Step One grievance had been improperly filed. Durrough also filed several other items concerning this complaint.

On October 7, 2004, Durrough received a letter from Dr. Wells, saying that the health services policy provides for dentures if they are medically necessary. Dr. Wells sent Durrough's letter on to the Cluster Dental Director for review, noting that Durrough would be scheduled for an examination and referral to see if a medical necessity exists which could be helped by the dentures. He also said that TDCJ-CID policy has no provisions for inmates to pay for medical care.

Legal Standards and Analysis

I. Exhaustion

Both the TDCJ-CID records and the documents which Durrough attaches to his complaint make clear that he did not exhaust his administrative remedies regarding his stay in Palestine Memorial Hospital, or the restraints used there. Durrough acknowledges that his grievance on this issue was rejected as untimely, as made clear in the documents which he attached to his complaint. The Fifth Circuit has held that the filing of an untimely grievance does not serve to exhaust administrative remedies. <u>Trevino v. Herrera</u>, slip op. no. 02-40864 (5th Cir., Feb. 20, 2003)

(unpublished) (citing Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999).  Thus, Durrough has partially exhausted his administrative remedies; he did exhaust his claim concerning his dental care, but not the other claims in the lawsuit.

Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed for a period of up to 180 days in order to permit exhaustion.  42 U.S.C. §1997e(a)(1).  This provision has now been deleted from the law.  As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327).  No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit.

In other words, the exhaustion process must be completed before the federal lawsuit is filed; even complete exhaustion following the filing of the lawsuit is not sufficient.  Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998).  In that case, the Fifth Circuit stated as follows:

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing Underwood's action with prejudice for purposes of proceeding IFP.

Underwood, 151 F.3d at 296.

The Sixth Circuit has held that when a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint *in toto* is appropriate.  Linder v. Sundquist, 46 Fed.Appx. 343 (6th Cir. 2002), *citing* White v. McGinnis, 131 F.3d 593, 595 (6th Cir. 1997).  The plain language of the statute confirms this reading; as noted above, 42 U.S.C. §1997e(a) says that "No action shall be brought with respect to prison conditions under Section 1983 of this title ... by a prisoner confined

in any jail, prison, or other correctional facility until *such administrative remedies are available* have been exhausted." (emphasis added) The Fifth Circuit has taken a strict approach to the exhaustion requirement. *See* Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).[2]

In this case, Durrough has not exhausted such administrative remedies as are available to him, because he raises claims which were not exhausted. However, the statute clearly provides that "*no action shall be brought*" until such administrative remedies as are available are exhausted. *See generally* Porter v. Nussle, 534 U.S. 516, 524, 123 S.Ct. 983, 988 (2002) (noting that all available remedies must be exhausted); Wright v. Hollingsworth, 260 F.3d at 358 (inmate required to exhaust available remedies, "whatever they may be").

For this reason, dismissal only of those claims which were not exhausted appears inappropriate. Significantly, the statute does not say that no *claim* which has not been exhausted may be brought, but that no *action* shall be brought until such administrative remedies as are available have been exhausted. The term "action" is all-encompassing, incorporating the whole cause, not merely the "complaint." *See* Whitaker v. City of Houston, 963 F.2d 831, 934 (5th Cir. 1992) (drawing a distinction between dismissal of the action and dismissal of the complaint); *cf.* Rule 2, Fed. R. Civ. P. Thus, the statutory language that "no action shall be brought ... until such administrative remedies as are available have been exhausted" plainly means that the lawsuit itself cannot be filed until all available administrative remedies have been exhausted.

In saying that "no action shall be brought" prior to exhaustion of administrative remedies, Congress necessarily intended that all available administrative remedies must be exhausted before the lawsuit can be filed at all. *See* statement of Sen. Abraham, April 19, 1996, explaining that under the law, state prisoners would have to exhaust "all administrative remedies" before filing suit in federal court (142 Cong. Rec. S3703-01, April 19, 1996); Joint Explanatory Statement by the House-

---

[2]In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit expressly declined to consider the propriety of a complete exhaustion rule, observing that the defendants in that case had not argued in favor of such a rule. Johnson, 385 F.3d at 523 n.15.

Senate Committee of Conference, 141 Cong. Rec. H13874-01, at H13928 (December 4, 1995) (explaining that 42 U.S.C. §1997a is being amended "to require that administrative remedies be exhausted prior to any prison conditions action being brought under any federal law by an inmate in federal court."). The Report of the Activities of the House Committee on the Judiciary, HR. Report 104-879 (January 2, 1997), p. 183, notes that this provision of the law "requires prisoners to exhaust the administrative remedies established by the corrections system before they may file a lawsuit in federal court." *See also* Underwood v. Wilson, 151 F.3d at 295 (noting Congressional intent of statute).

     Hence, the clear purpose of this law was to require that state prisoners proceed through all available administrative channels of relief before they could bring their lawsuit in federal court. The logical meaning of this requirement is that all administrative channels of relief must be pursued, on all claims which the prisoner wishes to raise, before he may file his lawsuit in federal court. It should be noted that the very term "exhaustion," in the prisoner civil rights context, is defined by the Fifth Circuit as "to take *complete* advantage of." Underwood, 151 F.3rd at 295 (emphasis added).

     A similar rule exists in the context of habeas corpus. The Fifth Circuit has specifically held that a habeas corpus petition must be dismissed if any issue has not been exhausted in the state courts. Thomas v. Collins, 919 F.2d 333 (5th Cir. 1990), *reh. den.* The reason for this rule is to allow the state courts the opportunity to rule upon an issue before it is adjudicated by the federal courts. *See generally* Rose v. Lundy, 455 U.S. 509 (1982). Although the question of state court rulings does not present itself in this issue, the underlying reasoning remains the same; where problems exist within the state prison, the state authorities should be given the first opportunity to review these problems and take appropriate action where necessary. This is the basis for the administrative exhaustion requirement, and it therefore follows that all issues to be raised in federal court should first be presented to the state administrative authorities for consideration and possible resolution. Underwood, 151 F.2d at 296 (noting that federal court intervention in prison affairs prior

to the prison having had the opportunity to address the complaint within its grievances procedures is relief to which the prisoner is not entitled).

The present case is an action brought with respect to prison conditions under Section 1983, by a prisoner confined in a correctional facility. The prison records show that this action was brought before such administrative remedies as were available to Durrough for claims that he raised as part of his action were exhausted. Consequently, he is in violation of the statute, which explicitly provides that no action shall be brought until all administrative remedies as are available have been exhausted. Porter v. Nussle, 534 U.S. at 524, 123 S.Ct. at 988; Wright v. Hollingsworth, 260 F.3d at 358. Because Durrough filed a lawsuit seeking federal court intervention where the state prison officials had not had the opportunity to address all of his claims, his lawsuit may be dismissed for failure to exhaust. Underwood, 151 F.3d at 296.

## II. The Merits of the Exhausted Claim

Even were this not the case, however, it is plain that Durrough's claim regarding his dental care is without merit. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally

be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Durrough has failed to show that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. The evidence, including the documents attached to Durrough's complaint, show that he has been evaluated for dentures, but has not shown a medical necessity for them. Durrough's disagreement with this decision is not tantamount to a showing of deliberate indifference to his medical needs. Norton, 122 F.3d at 293.

As noted above, the fact that the treatment provided is not "the best that money can buy" is not proof of deliberate indifference. Mayweather v. Foti, 958 F.2d at 92.

Nor has Durrough shown that he has suffered any harm, beyond discomfort, from the fact that he does not have dentures. He says that he is limited in the foods that he can eat, being limited only to foods which are soft, but there is no indication that this has affected his overall health; as noted above, he has been monitored for a medical need for dentures and thus far has not shown one.

The Fifth Circuit has held that indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989). The Court went on to observe that the Eighth Amendment does not afford protection against "mere discomfort or inconvenience." Wilson, 878 F.2d at 849. In this case, Durrough has not shown that the fact that he has not received dentures amounts to wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, or the deprivation of the minimal civilized measures of life's necessities, as opposed to mere discomfort or inconvenience. His claim on this point is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Durrough's claim regarding the fact that he has not been given dentures is frivolous and may be dismissed. *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). His remaining claims may also be dismissed as frivolous because he did not exhaust his administrative remedies. *See* Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (district court did not err in dismissing claims as frivolous for failure to exhaust administrative remedies). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to exhaust administrative remedies. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **19** day of **August, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE